UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GRANT & EISENHOFER P.A.,

                Plaintiff,

v.

BERNSTEIN LIEBHARD LLP,

                Defendant.



No. _____

**COMPLAINT**      

**JURY TRIAL DEMANDED**

**GRANT & EISENHOFER P.A.**
Jay W. Eisenhofer, Esq.
James J. Sabella, Esq.
Deborah A. Elman, Esq.
Robert D. Gerson, Esq.
485 Lexington Avenue
New York, New York 10017
(646) 722-8500

Plaintiff, Grant & Eisenhofer P.A. ("G&E"), brings this action for breach of contract and unjust enrichment against Bernstein Liebhard LLP ("Bernstein Liebhard" or "Defendant"), and alleges as follows:

### NATURE OF ACTION

1. Following numerous publicly reported problems involving Bernstein Liebhard that led to the resignation of a name partner, a number of institutional investor clients terminated Bernstein Liebhard as their counsel. The Ohio Public Employees Retirement System and the State Teachers Retirement System of Ohio (the "Ohio Funds"), which had retained Bernstein Liebhard to represent them in *In re Fannie Mae Securities Litigation*, No. 04-cv-1639 (D.D.C.) (the "Fannie Mae Litigation") requested that G&E replace Bernstein Liebhard as their counsel in that case. G&E instead suggested that Bernstein Liebhard continue in the case, and G&E serve as Of Counsel to Bernstein Liebhard in prosecuting the litigation. Pursuant to an agreement signed by Sandy A. Liebhard ("Liebhard"), G&E agreed to aid Bernstein Liebhard in the Fannie Mae Litigation; in return, G&E would contribute 26% of Bernstein Liebhard's obligations to pay the case's expenses, and G&E would receive 26% of Bernstein Liebhard's fee.

2. At all relevant times, G&E complied with its obligations under the agreement with Bernstein Liebhard, including dedicating in excess of 1,500 hours of lawyers' time to the case. In addition, G&E contributed hundreds of thousands of dollars to cover 26% of Bernstein Liebhard's obligation to pay expenses that arose in the prosecution of the case. Bernstein Liebhard was happy to have G&E cover Bernstein Liebhard's obligations, and never suggested during the course of the litigation that its agreement with G&E was somehow not in effect or needed to be renegotiated.

3. Only after a settlement was reached and approved in the Fannie Mae Litigation, and fees were awarded, when it was time to divide the attorneys' fees among the firms that had

worked on the case, was G&E informed for the first time that Bernstein Liebhard would not honor its agreement with G&E.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 USC § 1332. G&E is a Delaware professional association and Bernstein Liebhard is a New York limited liability partnership. No Bernstein Liebhard partners are citizens of the State of Delaware.

5. Venue is proper in this Judicial District pursuant to 28 USC § 1391(b). Many of the acts and transactions alleged herein, including the negotiation and execution of the relevant agreements at issue, occurred in substantial part in this District.

## PARTIES

**A.   PLAINTIFF**

6. Plaintiff G&E is a professional association organized under Delaware law with offices located in, among other places, New York City.

**B.   DEFENDANT**

7. Defendant Bernstein Liebhard is a New York limited liability partnership registered to do business in New York.

## SUBSTANTIVE ALLEGATIONS

**The Fannie Mae Case**

8. In September 2004, the first of several class actions against Fannie Mae a/k/a Federal National Mortgage Association ("Fannie Mae") and certain of its officers was filed in the United States District Court for the District of Columbia. The case alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in connection with, *inter alia*, Fannie Mae's alleged inappropriate accounting practices. Several related cases were filed across the country, which were eventually consolidated and/or

transferred to the District of Columbia. The consolidated case was captioned *In re Fannie Mae Securities Litigation*, No. 04-cv-1639 (D.D.C.).

9. On January 13, 2005, the Court appointed the Ohio Funds to serve as Lead Plaintiffs, and Waite Schneider Bayless & Chesley Co. LPA ("WSBC") and Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") as Co-Lead Counsel.

10. On January 7, 2008, the Court certified the action as a class action and appointed WSBC as Lead Class Counsel and Bernstein Liebhard as Co-Lead Class Counsel, replacing Berman DeValerio.

11. Francis P. Karam ("Karam") and William A.K. Titelman ("Titelman") were two of the partners at Bernstein Liebhard working on the Fannie Mae matter. Karam was one of the senior litigators working day-to-day on the case, and Titelman was the primary contact person at Bernstein Liebhard to the Ohio Funds.

**G&E's Involvement in the Fannie Mae Litigation**

12. In 2008, Bernstein Liebhard named partner Melvin Lifshitz resigned from the firm. The reported reasons for his resignation led some institutional investor clients to terminate their representation by Bernstein Liebhard.

13. On or about March 2, 2009, both Karam and Titelman left Bernstein Liebhard and began working at G&E. Representatives for the Ohio Funds spoke with Titelman about replacing Bernstein Liebhard with G&E, but G&E suggested an alternative, specifically for the purpose of protecting Bernstein Liebhard's role in the case. With the knowledge and support of Lead Counsel WSBC, G&E reached an agreement with Bernstein Liebhard and the Ohio Funds, pursuant to which G&E would join the Fannie Mae litigation as additional counsel and serve as "Of Counsel" to Bernstein Liebhard on behalf of the Ohio Funds. This agreement was

3

memorialized in a March 5, 2009 letter from G&E managing partner Jay W. Eisenhofer ("Eisenhofer") to Liebhard (the "G&E/BL Agreement"). Liebhard countersigned it that same day.

14. The pertinent terms of the G&E/BL Agreement are as follows:

Pursuant to Bernstein Liebhard's previously negotiated agreement with [WSBC], dated July 25, 2007, providing a fee to Bernstein Liebhard out of the overall fee, said portion of the overall fee due Bernstein Liebhard shall be divided as follows: 74% to Bernstein Liebhard and 26% to G&E.

15. On March 5, 2009, Titelman sent a letter, on G&E letterhead, to the Chief of Legal Services at the Ohio Attorney General's office enclosing a copy of the G&E/BL Agreement.

16. The Fannie Mae Litigation continued and G&E attorneys, Karam in particular, worked extensively on the matter.

17. Bernstein Liebhard had agreed with WSBC that it would receive 25% of the fees in the Fannie Mae Litigation. Under the G&E/BL Agreement, G&E was entitled to 26% of the 25% fee Bernstein Liebhard had negotiated with WSBC, or 6.5%.

18. On January 29, 2010, pursuant to a request from James R. Cummins ("Cummins") of WSBC, G&E paid $175,000 to the litigation fund. The $175,000 that Cummins requested G&E contribute to the litigation fund amounted to exactly 26% of Bernstein Liebhard's obligation to the litigation fund. This request indicates that Cummins and WSBC were aware of the G&E/BL Agreement from Bernstein; otherwise Cummins and WSBC could not have known how much to request from G&E.

19. On August 31, 2010, Karam's employment with G&E ended. Shortly before that date, Titelman, who remained involved in the case, notified Cummins and WSBC of Karam's impending departure and that G&E stood ready to continue working on the case.

4

20. In October of 2010, Titelman again spoke with Cummins regarding Karam's departure and the status of the Fannie Mae Litigation. Titelman stated that G&E stood ready to work on the case, even though Karam had left.

21. On October 21, 2010, Cummins sent an email to Eisenhofer seeking a contribution to the Fannie Mae litigation fund from G&E to bring G&Es contribution level up to 26% of the total for which Bernstein Liebhard was responsible.

22. On October 22, 2010, G&E paid $137,000 to the litigation fund.

23. On December 29, 2010, Cummins sent an email to Eisenhofer, Titelman, and Bernstein, among others, requesting an $800,000 contribution from G&E and Bernstein Liebhard to the Fannie Mae litigation fund. Cummins confirmed that to date, G&E had paid 26% of the amount for which Bernstein Liebhard was responsible. Cummins requested the $800,000 be paid in two installments of $400,000.

24. On January 10, 2011, G&E paid $104,000 to the Fannie Mae litigation fund—i.e., 26% of the first installment of $400,000.

25. On January 25, 2011, G&E paid $104,000 to the litigation fund—i.e., 26% of the second installment of $400,000. In the cover letter enclosing the check, Eisenhofer reiterated that G&E was "available to share in the litigation work."

26. On March 24, 25 and April 18, 2011, Cummins emailed the G&E/Bernstein Liebhard "group" asking for another $400,000 contribution to the Fannie Mae litigation fund. On May 3, 2011, well after Karam had left G&E, G&E entered into an agreement with WSBC (the "G&E/WSBC Agreement"), pursuant to which WSBC "commit[ed] to deal with [G&E] separately from Bernstein Liebhard going forward on the Fannie Mae Litigation." This agreement was administrative only. Since WSBC kept asking directly for payment, G&E

thought it fair at the end of the case to get paid directly.  Eisenhofer reiterated that G&E "remain[ed] ready and willing to assist…in any way." G&E enclosed a payment of $104,000 to the litigation fund, i.e., 26% of the requested $400,000.

27.     In total, G&E contributed $624,000 to the litigation fund.  Bernstein Liebhard contributed $1,776,000 to the litigation fund.  G&E's contributions thus amount to exactly 26% of the total combined amount Bernstein Liebhard was obligated to contribute to the litigation fund.

28.     Bernstein Liebhard and WSBC were both fully aware that G&E was making payments to the litigation fund to cover 26% of Bernstein Liebhard's obligations.

29.     When G&E was making these contributions to the litigation fund to cover 26% of Bernstein Liebhard's obligations, neither Bernstein Liebhard nor WSBC ever once stated that the G&E/BL Agreement had been terminated or was not fully in effect or needed to be revised because Karam had left G&E or for any other reason.  Bernstein Liebhard was all too happy to have G&E pay hundreds of thousands of dollars that otherwise Bernstein Liebhard was obligated to pay to the litigation fund.

**Fannie Mae Settles and Defendant Refuses to Pay G&E**

30.     A settlement was reached in the Fannie Mae case on June 7, 2013.

31.     After the Fannie Mae case settled, Bernstein Liebhard had a disagreement with Markovits, Stock & DeMarco, LLC ("MSD"), which had replaced WSBC as Lead Counsel in the Fannie Mae Litigation, regarding the amount of its fee.  On September 20, 2013, Bernstein Liebhard filed papers in the Fannie Mae litigation requesting that the Court direct MSD to pay Bernstein Liebhard in accordance with the 2007 agreement which entitled Bernstein Liebhard to "25% of the gross fee awarded to all counsel." (ECF No. 1096).  In this Court submission,

Bernstein Liebhard acknowledged the existence of the agreement between it and G&E by noting that "[t]he 25% also includes the allocation to the Grant & Eisenhofer firm." *Id.*

32. Bernstein Liebhard, through Bernstein, even asked G&E to help with, and to contribute 26% of its legal fees in connection with, this fee dispute. G&E declined to participate as a named party in this litigation. But G&E fully expected to reimburse Bernstein Liebhard for its share of the legal fees. At no time did Bernstein suggest that there was any issue with the G&E/BL Agreement. Indeed, if Bernstein had thought the G&E/BL Agreement was not in effect, there would have been no basis for him to expect G&E to contribute any funds to this fee dispute, let alone precisely the 26% provided for under the G&E/BL Agreement.

33. Ultimately, the fee dispute between Bernstein Liebhard and MSD was settled.

34. On December 6, 2013, the United States District Court for the District of Columbia entered a memorandum opinion and a final judgment approving the settlement of the Fannie Mae Litigation and awarding attorneys' fees and expenses, which were to be and were paid to MSD as Lead Counsel, for allocation to all Plaintiffs' Counsel.

35. The final amount of the attorneys' fees awarded in the Fannie Mae litigation was an estimated $29,152,612.27. (ECF No. 1118).

36. Because, under the G&E/BL Agreement, G&E was entitled to 26% of the 25% fee Bernstein Liebhard had negotiated with WSBC, G&E was entitled to receive a fee payment of approximately $1,900,000.

37. In the alternative, G&E was entitled to 26% of the actual fee allocated to Bernstein Liebhard—approximately $5,186,000—or approximately $1,348,000. (Bernstein Liebhard later voluntarily reduced its allocation by $40,000 to increase the fees paid to another firm.)

7

38. On September 30, 2014, on behalf of Lead Counsel, William B. Markovits ("Markovits") informed G&E that Lead Counsel would be sending G&E only $324,995.61 in attorneys' fees.

39. On October 3, 2014, G&E objected to the calculation of G&E's fee award, rejecting $324,995.61 as full payment of G&E's share of attorneys' fees. G&E also pointed out that pursuant to the G&E/WSBC Agreement, G&E was entitled to receive its money directly from WSBC, rather than have the money paid to Bernstein Liebhard and then forwarded to G&E.

40. On October 6, 2014, Markovits responded that he would not abide by the terms of the G&E/WSBC Agreement and that any agreement G&E has with Bernstein Liebhard "should be worked out between the firms."

41. On or about October 13, 2014, Bernstein wrote to G&E stating for the first time that Bernstein Liebhard would not honor the G&E/BL Agreement and that Bernstein Liebhard was not obligated to pay attorneys' fees to G&E above the $324,995.61 already paid.

## FIRST CAUSE OF ACTION
### Breach of Contract

42. Plaintiff realleges each and every allegation contained above as if fully set forth herein.

43. This claim is brought against Bernstein Liebhard for its breach of the G&E/BL Agreement.

44. The G&E/BL Agreement is a binding contract between G&E and Bernstein Liebhard.

45. G&E fulfilled its obligations under the G&E/BL Agreement. G&E attorneys performed extensive work on the Fannie Mae Litigation and G&E contributed 26% of Bernstein

Liebhard's obligations to the Fannie Mae litigation fund. G&E complied with its obligation under the G&E/BL Agreement to litigate the Fannie Mae case in accordance with its fiduciary duties to the Ohio Funds.

46. Bernstein Liebhard breached its obligations under the G&E/BL Agreement by failing to pay to G&E 26% of the attorneys' fees Bernstein Liebhard was awarded in the Fannie Mae Litigation final judgment.

47. Bernstein Liebhard's actions violate the covenant of good faith and fair dealing attendant to every contract, including the G&E/BL Agreement.

48. G&E was damaged as a result of Bernstein Liebhard's misconduct in an amount to be determined at trial, but in excess of $1 million.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. This is a claim against Bernstein Liebhard for unjust enrichment. As a result of Bernstein Liebhard's conduct, it has been enriched at G&E's expense.

51. Bernstein Liebhard has been directly enriched as a result of its withholding of attorneys' fees arising from the settlement of the Fannie Mae Litigation, to which G&E is entitled under the terms of the G&E/BL Agreement.

52. The circumstances are such that it would be against equity and good conscience to permit Bernstein Liebhard to retain its ill-gotten gains from G&E. Bernstein Liebhard has an obligation fairly to compensate G&E for its legal services.

53. G&E was damaged as a result of Bernstein Liebhard's misconduct in an amount to be determined at trial but in excess of $1 million.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

An award in favor of Plaintiff against Defendant, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, but including at a minimum:

(a) Damages in an amount to be determined by the Court but not less than $1 million together with interest;

(b) Attorneys' fees and costs in an amount to be determined by the Court; and

(c) Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: December 12, 2014

_____
Jay W. Eisenhofer
James J. Sabella
Deborah A. Elman
Robert D. Gerson
**GRANT & EISENHOFER P.A.**
485 Lexington Ave., 29th Floor
New York, NY 10017
(646) 722-8500