USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/30/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
 :
GRANT & EISENHOFER, P.A.,                                              :
 :
                Plaintiff,                          :     14-CV-9839 (JMF)
 :
      -v-                                                             :     OPINION AND ORDER
 :
BERNSTEIN LIEBHARD LLP, et al.,                                        :
 :
                Defendants.                         :
 :
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Grant & Eisenhofer, P.A. ("G&E") initiated this action against fellow law firm Bernstein Liebhard LLP ("BL") to recover money allegedly owing from a class action litigation fee-sharing arrangement. In its Amended Complaint, G&E added Defendant Markovits, Stock & DeMarco, LLC ("MSD"), the law firm that stepped into the role of lead counsel in that litigation beginning in 2012. In a prior opinion, the Court granted in part and denied in part BL's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, 14-CV-9839 (JMF), 2015 WL 1809001 (S.D.N.Y. Apr. 20, 2015). MSD now moves to dismiss, pursuant to Rule 12(b)(2), for lack of personal jurisdiction, alleging that it does not have sufficient contacts with New York to establish jurisdiction in this District. (Def. Markovits, Stock & DeMarco LLC's Mem. Law Supp. Mot. To Dismiss Am. Compl. (Docket No. 56) ("MSD Def.'s Mem.") 8-16).[1] Alternatively, both MSD and BL move, pursuant to Title 28, United States Code, Section 1404(a), for a transfer of

---

[1] MSD also moved to dismiss G&E's breach-of-contract and tortious-interferences claims pursuant to Rule 12(b)(6). (MSD Def.'s Mem. 20-29). In response, G&E withdrew its tortious-interference claim. (*See* Pl.'s Mem. 8 n. 18).

1

venue to the United States District Court for the District of Columbia, arguing that any fee-sharing dispute is properly determined by that Court in light of its final Order and Stipulation of Settlement that resolved the underlying class action litigation.  (MSD Def.'s Mem. 31-33; Bernstein Liebhard LLP's Mem. Law Supp. Mot. To Transfer Venue (Docket No. 59) ("BL Def.'s Mem.") 1-4).  For the reasons stated below, MSD's motion to dismiss for a lack of personal jurisdiction is GRANTED, and the motion to transfer is DENIED.

## BACKGROUND

The facts relevant to these motions can be summarized briefly.[2]  This case arises out of a fee-sharing arrangement in *In re Fannie Mae Securities Litigation*, No. 04-CV-1639 (D.D.C.) (the "Fannie Mae litigation"), a class action brought in the United States District Court for the District of Columbia.  (Am. Compl. (Docket No. 23) ¶ 1).  G&E is a professional association incorporated in Delaware with one of its two principal offices in New York City.  (*Id.* ¶ 7; Decl. James J. Sabella Opp'n Def. Markovits, Stock & DeMarco LLC's Mot. To Dismiss To Transfer & Def. Bernstein Liebhard LLP's Mot. To Transfer (Docket No. 62) ("Sabella Decl.") ¶ 3).  MSD is a limited liability corporation incorporated in Ohio with its sole office in Ohio.  (Am. Compl. ¶ 9; Decl. W.B. Markovits (Docket No. 55) ("Markovits Decl.") ¶ 3).  BL is a New York limited liability partnership.  (Am. Compl. ¶ 8).

In January 2008, the D.C. District Court appointed Waite Schneider Bayless & Chesley Co. LPA ("WSBC") and BL Lead and Co-Lead Class Counsel, respectively, in the Fannie Mae litigation.  (*Id.* ¶ 1, 11-12).  On or about March 2, 2009, G&E and BL entered a letter agreement concerning a fee arrangement for their work in the litigation, whereby G&E would receive

---

[2]   The Court's opinion denying in part and granting in part BL's motion to dismiss — familiarity with which is assumed — contains a more detailed description of the background of this case.  *See Grant & Eisenhofer*, 2015 WL 1809001, at *1-2.

twenty-six percent of the fee ultimately allocated to BL.  (*Id.* ¶¶ 16-17).  By letter dated May 3, 2011, G&E entered into a separate agreement with WSBC that allowed it "to deal directly with [WSBC] and not have to deal with [BL] when it comes time for any potential fee distribution." (Decl. Christian P. Siebott Supp. Def. Bernstein Liebhard LLP's Mot. To Dismiss Pursuant Fed. R. Civ. P. 12(b)(6) (Docket No. 10) Ex. B; *see* Am. Compl. ¶ 30).

In 2012, the D.C. District Court substituted MSD for WSBC as Lead Counsel in the Fannie Mae litigation.  (Am. Compl. ¶ 34).  The following year, the Fannie Mae litigation settled.  (*Id.* ¶ 35).  In the Stipulation of Settlement dated May 7, 2013, the D.C. District Court directed MSD, as Lead Counsel, to "allocate the attorneys' fees among the Plaintiffs' Counsel authorized to assist in the prosecution of the Consolidated Action in a manner in which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Consolidated Action."  (Markovits Decl. Ex. D ¶ 22).  On December 5, 2013, the D.C. District Court entered the final settlement order, which allotted twenty-two percent of the Settlement Fund — totaling approximately $29 million — to attorneys' fees for plaintiffs' counsel.  (Am. Compl. ¶ 40; Markovits Decl. Ex. I ¶ 8).  The Order stated that the fees "shall be paid to Lead Counsel as provided in the Stipulation, for allocation to Plaintiffs' Counsel."  (*Id.*). Thereafter, MSD allocated $5,186,000 to BL and $324,995.61 to G&E.  (Am. Compl. ¶ 43). G&E insists that it is owed either $1,900,000 or $1,348,000 — representing twenty-six percent of the twenty-five percent fee that BL had negotiated with WSBC and twenty-six percent of the actual fee allocated to BL, respectively.  (*Id.* ¶¶ 41-42).

## LEGAL STANDARDS

It is well established that a plaintiff bears the burden of establishing a court's personal jurisdiction over a particular defendant.  *See, e.g.*, *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609

F.3d 30, 34 (2d Cir. 2010).  Where, as here, subject-matter jurisdiction is premised on diversity of citizenship, whether a court has personal jurisdiction over a non-resident defendant is determined by the law of the forum state.  *See, e.g.*, *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006).  The showing a plaintiff must make, however, to defeat a jurisdiction-testing motion "'varies depending on the procedural posture of the litigation.'"  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  Where, as here, the parties have not engaged in discovery, a plaintiff seeking to defeat a motion to dismiss based on the lack of personal jurisdiction need only make a *prima facie* showing that jurisdiction exists.  *See, e.g.*, *id.* at 84-85; *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).  Such a showing "entails making 'legally sufficient allegations' . . . including 'an averment of facts that, if credited[,] would suffice'" to establish that jurisdiction exists.  *Penguin Grp.*, 609 F.3d at 35 (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)).  A court must therefore "view[ ] all facts in the light most favorable to the non-moving party."  *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011).

On a motion to transfer venue, by contrast, the burden falls on the party seeking transfer, which must make out the case for transfer by "clear and convincing evidence."  *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010) (collecting cases).  In considering such a motion, a court must first establish that the case could have been filed in the transferee district and, if so, then determine whether the convenience and the interests of justice favor transfer.  *See, e.g.*, *Bossom v. Buena Cepa Wines, LCC*, No. 11-CV-6890 (VB), 2011 WL 6182368, at *1 (S.D.N.Y. Dec. 12, 2011); *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006).  The latter inquiry is guided by a non-exhaustive list of

4

factors, including: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice. *See, e.g.*, *N.Y. Marine*, 599 F.3d at 112; *Larew v. Larew,* No. 11-CV-5771 (BSJ) (GWG), 2012 WL 87616, at *3 (S.D.N.Y. Jan. 10, 2012).  As a general matter, "a plaintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of a transfer." *Rush v. Fischer*, 923 F. Supp. 2d. 545, 556 (internal quotation marks omitted).  At the same time, "[t]here is no rigid formula for balancing" the factors and "no single one of them is determinative." *Larew*, 2012 WL 87616, at *3.  Ultimately, district courts "have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair*, 462 F.3d at 106.

## MSD'S MOTION TO DISMISS

The Court turns first to MSD's motion to dismiss for lack of personal jurisdiction.  To establish personal jurisdiction, G&E relies solely on Section 302(a)(1) of New York's long-arm statute (Pl.'s Consol. Mem. Law Opp'n (1) Def. Markovits, Stock & DeMarco LLC's Mot. To Dismiss To Transfer & (2) Def. Bernstein Liebhard LLP's Mot. Transfer (Docket No. 61) ("Pl.'s Mem.") 5-8), which permits a court to exercise jurisdiction over a person or entity that "in person or through an agent . . . transacts business within the state or contracts anywhere to supply goods and services in the state." N.Y. C.P.L.R. § 302(a).  To determine whether jurisdiction exists under Section 302(a)(1), a court must decide "(1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction."

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks omitted). "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (internal quotation marks omitted). As for Section 302(a)(1)'s second requirement, "a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Id.* at 66 (brackets and internal quotation marks omitted). Section 302(a)(1)'s requirements may be satisfied by a single act within New York, *see id.* at 62, but "jurisdiction will not extend to cover defendants with nothing more than petty contacts to the state," *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 726 (S.D.N.Y. 2010) (internal quotation marks omitted).

MSD contends, and G&E does not dispute, that it has no offices, employees, bank accounts, or property in New York. (MSD Def.'s Mem. 2-3). Nor did any MSD attorneys "appear in New York in connection with the [Fannie Mae litigation] settlement or fee allocation dispute." (MSD Def.'s Mem. 2-3; *see* Pl.'s Mem. 5-8). Instead, G&E premises jurisdiction over MSD on the basis of "numerous" letters, e-mails, and telephone calls exchanged between MSD and G&E attorneys located in New York. (Pl.'s Mem. 5-6; *see also* Markovits Decl., Ex. B at 2-3). Those communications, G&E argues, constitute sufficient transactions within New York to satisfy the first prong of Section 302(a)(1), and "would have included communications regarding the preparation and submission of the fee application, discussion of the amounts MSD would pay to G&E and to BL, and MSD's repudiation of the G&E/WSBC Agreement," thereby satisfying Section 302(a)(1)'s second prong. (Pl.'s Mem. 7). MSD, on the other hand, challenges the

6

sufficiency of those contacts, contending that "letters or phone communications with persons or entities in New York" do not suffice under Section 302(a)(1).  (MSD Def's Mem. 13).

MSD has the better of the argument, as courts have routinely held that e-mails, letters, and telephone calls with an out-of-state defendant are not enough to establish personal jurisdiction under Section 302(a)(1).  *See, e.g.*, *Beacon Enter., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) ("New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." (citing cases)); *Penn Grp., LLC v. Slater*, No. 07-CV-729 (MHD), 2007 WL 2020099, at *10 (S.D.N.Y. June 13, 2007) ("[E]ven substantial negotiations conducted by mail, telephone, or electronic communications often do not confer jurisdiction."); *Premier Lending Servs., Inc. v. J.L.J. Assocs.*, 924 F. Supp. 13, 16 (S.D.N.Y. 1996) ("Generally, telephone, fax and mail between an out-of-state defendant and a New York party in the course of contract negotiations will not confer jurisdiction unless the defendant used communications with New York as a means of projecting himself into the 'local commerce.'" (citing cases)).  Instead, a plaintiff must show that the "defendant's direct and personal involvement on [its] own initiative projected [itself] into New York to engage in a sustained and substantial transaction of business." *Aquiline Capital Partners v. Finarch, LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted).  Here, G&E fails to do so, as it does not allege that MSD "projected" itself into, solicited any business from, or purposefully developed a relationship with a party in New York in conjunction with the Fannie Mae litigation.  *See, e.g.*, *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787-89 (2d Cir. 1999) (dismissing claims for lack of personal jurisdiction where a Puerto Rico law firm was proposed to a New York client by a New York bank and did not solicit the client itself); *Mayes v.*

*Leipziger*, 674 F.2d 178, 184-85 (2d Cir. 1982) (finding a lack of jurisdiction where a California law firm "did not initiate the contact with" a client who resided in New York but rather was "solicited" by the client's prior firm).  G&E claims that MSD "assumed" WSBC's obligations and then engaged in communications directed at New York, but there is no indication that MSD ever actively solicited business in New York or reached out to G&E in New York to commence a business relationship.  (Am. Compl. ¶ 2; Pl.'s Mem. 2, 8-9).  If anything, the record indicates that MSD was chosen and retained by certain Ohio plaintiffs in the Fannie Mae litigation.  (*See* MSD Def.'s Mem. 1; Markovits Decl. ¶¶ 10-11).  That does not suffice to establish personal jurisdiction over MSD in New York.

*Fischbarg v. Doucet*, 9 N.Y.3d 375 (2007), the primary authority upon which G&E relies, is not to the contrary.  (Pl.'s Mem. 6).  In contrast to this case, the law firm defendant in *Fischbarg* had made a "purposeful attempt to establish an attorney-client relationship" with a New York client and had "sought out [the client] in New York and established an ongoing attorney-client relationship with him."  9 N.Y.3d at 380-81.  Thus, the decision stands for the uncontroversial proposition that out-of-state communications can create a sufficient basis for Section 302(a)(1) jurisdiction if the defendant takes some initiative in creating the connection with a New York party in the first place.  Indeed, courts have subsequently contrasted the facts in *Fischbarg* with situations where, as here, an out-of-state defendant did not solicit or instigate an ongoing connection with New York.  *See, e.g.*, *Three Five Compounds, Inc. v. Scram Techs., Inc.*, No. 11-CV-1616 (RJH), 2011 WL 5838697, at *9-11 (S.D.N.Y. Nov. 21, 2011); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 421 (S.D.N.Y. 2010).[3]  In short, because

---

[3]   For similar reasons, the other cases that G&E cites (*see* Pl.'s Mem. 6-7) — *Sisler v. Wal-Mart Stores, Inc.*, No. 02-cv-602A, 2003 WL 23508105 (W.D.N.Y. Dec. 24, 2003); *Sluys v. Hand*, 831 F. Supp. 321 (S.D.N.Y. 1993); and *Otterbourg, Steindler, Houston & Rosen, P.C. v.*

8

G&E alleges no facts suggesting that MSD solicited the relationship that resulted in communications with G&E attorneys in New York, its claims against MSD are dismissed for a lack of personal jurisdiction.[4]

## THE MOTION TO TRANSFER VENUE

Although MSD's motion to transfer venue is moot in light of the foregoing, BL also moves, pursuant to Section 1404(a), to transfer venue to the United States District Court for the District of Columbia. (BL Def.'s Mem. 1-4; *see also id.* at 1 (incorporating by reference MSD's arguments for transfer of venue)).[5] BL argues that venue would be proper in the District of Columbia (a proposition that G&E does not dispute (Pl.'s Mem. 14)) and that both convenience and the interests of justice favor transfer there because the parties' dispute is contingent on an understanding and interpretation of the Fannie Mae litigation and settlement (MSD Def.'s Mem. 33; BL Def.'s Mem. 3). BL also contends that G&E's choice of New York as the forum is not entitled to deference because G&E is a law firm organized under the laws of Delaware with offices other than the one in New York. (Def. Markovits, Stock & DeMarco LLC's Reply Mem.

---

*Shreve City Apts., Ltd.*, 147 A.D. 2d 327 (1st Dep't 1989) — are distinguishable. In both *Sisler* and *Sluys*, the defendants had initiated contact with the New York plaintiffs by sending debt collection letters into the state. *See Sisler*, 2003 WL 23508105, at *1; *Sluys*, 831 F. Supp. at 324. And in *Otterbourg*, the out-of-state defendants had retained the plaintiff New York law firm and actively participated via conference call in settlement negotiations and a lengthy meeting in New York, among other contacts. *See id.* at 332.

[4]     As there is no jurisdiction over MSD under New York law, the Court need not, and does not, reach MSD's alternative argument that exercising jurisdiction over it would offend due process. (MSD Def.'s Mem. 15-16).

[5]     Although BL waived any objection that venue is *improper* in this Court by previously filing a motion to dismiss and failing to raise improper venue as a defense, *see* Fed. R. Civ. P. 12(h)(1), "[w]aiver of objection to improper venue only pertains to a motion to dismiss or transfer on the basis of improper venue pursuant to 28 U.S.C. § 1406(a), not to a motion to transfer for convenience and the interest of justice pursuant to 28 U.S.C. § 1404(a)," *Smart v. Goord*, 21 F. Supp. 2d 309, 318 n.6 (S.D.N.Y. 1998) (citing cases).

Law Further Supp. Mot. To Dismiss Am. Compl. (Docket No. 63) ("MSD Def.'s Reply Mem.") 12; Bernstein Liebhard LLP's Reply Mem. Law Further Supp. Mot. To Transfer Venue (Docket No. 64) ("BL Def.'s Reply Mem.") 7). In response, G&E points out that, "[w]hile the Settlement Stipulation in the Fannie Mae Litigation was filed with the Court in D.C., G&E's legal work was largely performed in New York, BL's legal work was largely performed in New York, the negotiation and execution of the G&E/BL Agreement occurred in New York, and G&E negotiated the agreement with WSBC in New York." (Pl.'s Mem. 16-17). Furthermore, G&E asks the Court to defer to its choice of forum because it is sufficiently at home here — with one of its principal offices in, and a significant connection between the underlying events and, New York. (Am. Compl. ¶ 7; Sabella Decl. ¶ 3; Pl.'s Sur-Reply Mem. Law Further Opp'n Def. Bernstein Liebhard LLP's Mot. To Transfer Venue (Docket No. 69) ("Pl.'s Sur-Reply Mem.") 4).

There is indisputably a close connection between the present case and the Fannie Mae litigation. Moreover, for various reasons, interpretation and enforcement of orders entered in that litigation are better entrusted the D.C. District Court in the first instance. But, ultimately, the Section 1404(a) factors cut in favor of keeping this case here for the simple reason that the parties' breach-of-contract dispute does not turn on the Fannie Mae litigation settlement, but rather on the alleged side agreement or agreements among G&E, BL, and WSBC — the most important of which (the agreement between G&E and BL), BL concedes, "was executed at least partially in New York." (BL Def.'s Reply Mem. 3).[6] As G&E accurately points out, the D.C.

---

[6] BL argues that its fee agreement with G&E is "subordinate to two other agreements" — namely, the agreement between BL and its Ohio clients and the agreement between BL and WSBC — "and must be read in conjunction with those." (BL Def.'s Reply Mem. 3). As BL concedes, however, those agreements were neither negotiated nor executed in the District of

10

District Court "merely awarded an aggregate fee" to be distributed by Lead Counsel in the Fannie Mae litigation. (Pl.'s Mem. 20; *see also* Markovits Decl., Ex. I ¶ 8). The present dispute, therefore, does not concern the D.C. District Court's allocation of fees; instead, it concerns the validity of fee-sharing agreements made antecedent to and independent of the settlement and fee allocation, as to which the D.C. District Court is in no better position than this Court is. (*See* Pl.'s Mem. 4-5, 20; Am. Compl. ¶¶ 4, 39-46). Put simply, where the enforcement of such agreements is at issue, and "it is the fee agreement, not the work, that is disputed," transfer from the venue where the agreements were negotiated and executed to the venue where the operative litigation took place is not warranted. *Elec. Packaging Sols., Inc. v. Dickstein Shapiro, LLP*, No. 13-CV-01636-REB-KMT, 2014 WL 884913, at *2 (D. Colo. Mar. 6, 2014).

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987), which holds that courts may invalidate fee-sharing agreements when they threaten the interests of class action plaintiffs, does not call for a different result. BL argues that, in light of *Agent Orange*, the D.C. District Court's jurisdiction over the Fannie Mae litigation makes it the proper venue to determine the propriety of the fee-sharing agreements here. (*See* BL Def.'s Mem. 2-3; BL Def.'s Reply Mem. 4-6). The *Agent Orange* Court, however, did not address the issue of venue, and the parties cite (and this Court has found) no cases where the decision was relied upon to support a transfer of venue. The D.C. District Court may have retained jurisdiction over the distribution of awards from the Fannie Mae litigation settlement fund (Markovits Decl., Ex. I ¶ 18), but G&E seeks payment from BL — not from the fund itself. Furthermore, BL's contention that the fee-sharing agreements are disproportionate to the work G&E actually performed turns on an

---

Columbia. (*Id.*). Accordingly, even if its assertions about the relationship among the agreements are correct, that would not justify transfer to the District of Columbia.

11

interpretation of the agreements in the first place. (*See* BL Def.'s Reply Mem. 2-3, 5-6). In short, whether G&E is entitled to a larger portion of the already allocated attorneys' fees is a question of New York contract law that is appropriate for resolution in this Court and need not be addressed by the D.C. District Court in the first instance. *See Grant & Eisenhofer*, 2015 WL 1809001, at *3-4 (discussing G&E's surviving breach-of-contract claim against BL).

The other Section 1404(a) factors are either neutral or favor keeping the case here. First, despite BL's argument to the contrary, G&E's choice of a New York forum is entitled to at least some deference. Although it may have another office in Delaware (and at one point had an office in the District of Columbia), New York is one of its "principal" locations (*see* Am. Compl. ¶ 7; Sabella Decl. ¶ 3) and the majority of the lawyers relevant to this dispute were located here (*see* Sabella Decl. ¶ 4). *See Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 29 (E.D.N.Y. 2014) (deferring to the plaintiff's choice of forum where the plaintiff "sufficiently established that its participation in the events giving rise to [the] case occurred in New York); *ESPN, Inc. v. Quicksilver, Inc.*, 581 F. Supp. 2d 542, 551 (S.D.N.Y. 2008) (holding that the plaintiff's choice of forum, even though not its home, was entitled to deference because the plaintiff "sufficiently established that many of its operations, including those germane to this case, are carried out in New York City, and that most of its potential witnesses work in New York").

Second, the parties' disagreement about the location of party and third-party witnesses and the availability of process to compel the latter does not favor transfer to the District of Columbia. (BL Def.'s Reply Mem. 3; BL Def.'s Mem. 6-7; Pl.'s Mem. 14, 17; Pl.'s Sur-Reply Mem. 3). On this point, the moving party "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *ESPN*, 581 F. Supp. 2d at 550 (citing *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*,

440 U.S. 908 (1979)).  MSD alleges that "the signatories to the Stipulation of Settlement, as well as the Ohio Attorney General," are potential witnesses who "cannot be compelled to appear in New York."  (MSD Def.'s Reply Mem. 12).  BL similarly names the Ohio Attorney General and the Ohio funds who were plaintiffs in the Fannie Mae litigation as possibly "the most vital witnesses" based on their ability to testify to the validity of the contested fee agreements among G&E, BL, and WSBC.  (BL Def.'s Reply Mem. 2-3).  Even assuming that those witnesses become "vital" to a contract dispute between two New York law firms, however, their location in Ohio does not militate in favor of transfer to the District of Columbia.  As for BL's argument that the D.C. District Court would have subpoena power over the Ohio witnesses by virtue of the Fannie Mae litigation — a somewhat dubious proposition, given that this is an entirely distinct proceeding — G&E could still obtain relevant testimony via deposition.  *See Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006); *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 209 (S.D.N.Y. 1998).

   Finally, the Court's dismissal of G&E's claims against MSD for lack of personal jurisdiction does not call for transferring G&E's claims against BL to the District of Columbia.  To be sure, the potential lack of jurisdiction over one or more defendants is a factor to be weighed in the Section 1404(a) analysis.  *See, e.g.*, *Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 112 (S.D.N.Y. 2007); *Societe General v. Florida Health Sciences Ctr.*, 03-CV-5615 (MGC), 2003 WL 22852656, at *7 (S.D.N.Y. Dec. 1, 2003).  Where transfer is granted in such cases, however, there is a robust connection between the claims at issue and the transferee forum.  *See Credit Suisse*, 469 F. Supp. 2d at 112 (noting that a related arbitration had begun in the transferee forum and "a significant number of witnesses and documents relating to the subject matter of this lawsuit" were located there); *Societe Generale*, 2003 WL 22852656, at *7

(holding that transfer was appropriate where personal jurisdiction was likely lacking in New York, the events giving rise to the suit took place in the transferee district, and witnesses were located there). Here, as discussed above, the connections between this suit and the District of Columbia are tenuous; few, if any, witnesses or documents are located there, and none of the relevant conversations or contract negotiations took place in that District. Thus, the fact that this Court is not an available forum for G&E's dispute with MSD does not render the District of Columbia an appropriate forum for G&E's dispute with BL — particularly given that G&E did not move in the alternative for, or otherwise consent to, the transfer. *See Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 397 (S.D.N.Y. 2006) (dismissing two defendants for lack of personal jurisdiction and declining to transfer claims against the remaining defendant in part because the defendant did not meet the burden of showing that the Section 1404(a) factors favored transfer); *Wisselman v. Mount Snow, Ltd.*, 524 F. Supp. 78, .80 (E.D.N.Y. 1981) (dismissing for lack of personal jurisdiction and declining to transfer because it appeared "that transfer would merely shift the inconvenience from one party to the other" (internal quotation marks omitted)); *cf. Mangia Media Inc. v. Univ. Pipeline, Inc.*, 846 F. Supp. 2d 319, 324 (E.D.N.Y. 2012) (transferring where the parties had "made clear that in the event that this court holds that it lacks personal jurisdiction . . . they [would] consent to transfer of [the] matter").

In sum, because G&E's choice of forum is entitled to some deference, and BL fails to show — let alone show by clear and convincing evidence — that convenience and the interests of justice strongly outweigh G&E's choice, the motion to transfer must be and is denied.

## CONCLUSION

For the reasons stated above, MSD's motion to dismiss is GRANTED, and all claims against MSD are dismissed; Defendants' motion to transfer venue is DENIED, MSD's because it

is moot and BL's because it fails on the merits.  The Clerk of Court is directed to terminate MSD as a party as well as Docket Nos. 54 and 58.  The stay of the case is also lifted (*see* Docket No. 45); all discovery shall be completed by **December 8, 2015**, and the parties shall appear for a pretrial conference on **December 9, 2015** at 3:15 p.m. in **Courtroom 1105** of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York.  By the **Thursday prior to that conference**, the parties shall file a joint letter in accordance with pages six and seven of the Case Management Plan and Scheduling Order.  (Docket No. 12).

SO ORDERED.

Date:  September 30, 2015
       New York, New York

JESSE M. FURMAN
United States District Judge