UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
GRANT & EISENHOFER, P.A.,                              :
:
                  Plaintiff,                :      14-CV-9839 (JMF)
:
      -v-                                                 :      OPINION AND ORDER
:
BERNSTEIN LIEBHARD, LLP,                          :
:
                  Defendant.               :
:
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/28/2016

JESSE M. FURMAN, United States District Judge:

      This case concerns a fee-sharing dispute between two law firms that did work on behalf of the plaintiffs in *In re Fannie Mae Securities Litigation*, No. 04-CV-1639 (D.D.C.) (the "Fannie Mae litigation"), a class action brought in the United States District Court for the District of Columbia. Plaintiff Grant & Eisenhofer, P.A. ("G&E") contends that it did not receive all of what it was owed by Defendant Bernstein Liebhard, LLP ("Bernstein Liebhard") pursuant to a fee-sharing agreement between the two firms. Following unsuccessful motions to dismiss and to transfer venue, Bernstein Liebhard now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. For the reasons that follow, Bernstein Liebhard's motion is GRANTED and the Complaint is dismissed.

## BACKGROUND

      The relevant facts, taken from the parties' Local Rule 56.1 Statements and the supporting record, are undisputed. In 2005, the Court presiding over the Fannie Mae litigation (the "Fannie Mae Court") appointed two public retirement funds from Ohio (the "Ohio Funds") to serve as Lead Plaintiffs and their choice of counsel, Waite Schneider Bayless & Chesley Co. LPA

("Waite Schneider"), to serve as Lead Counsel. (Statement Undisputed Facts Supp. Def.'s Mot. Summ. J. (Docket No. 82) ("Def.'s SOF") ¶ 1; Pl.'s Response Def. Bernstein Liebhard LLP's Statement & Pl.'s Statement (Docket No. 85) ("Pl.'s SOF") 1). On July 25, 2007, Waite Schneider entered into a fee-sharing agreement with Bernstein Liebhard (the "Waite Schneider Fee Agreement"). That agreement provided that, if the Fannie Mae litigation was resolved between July 1, 2008, and June 30, 2009, Bernstein Liebhard would receive 25% of the gross fees awarded to all counsel, unless certain conditions were met, in which case Bernstein Liebhard's fee would be reduced, but not below 13% of the overall fees. (Def.'s SOF ¶ 2; Pl.'s SOF 1; *see* Decl. Michael S. Bigin Supp. Def.'s Mot. Summ. J. (Docket No. 83) ("Bigin Decl."), Ex. 1). If the Fannie Mae litigation was not resolved by June 30, 2009, Bernstein Liebhard's fee was subject to negotiation, but would not be less than 25% of the overall fees (subject to certain adjustments not relevant here). (Bigin Decl., Ex. 1). A few months later, the Fannie Mae Court appointed Bernstein Liebhard to serve as Co-Lead Counsel. (Def.'s SOF ¶ 4).

Two Bernstein Liebhard partners, Francis Karam and William Titelman, were responsible for the Fannie Mae litigation; Titelman maintained the relationship with the Ohio Funds, and Karam oversaw the day-to-day work. (*Id.* ¶ 5). In February 2009, however, Karam and Titelman announced that they were leaving Bernstein Liebhard to join G&E. (*Id.* ¶ 6). Bernstein Liebhard and G&E agreed (at first, it seems, informally) that Karam and Titelman would continue to work on the Fannie Mae litigation, that G&E would be added as counsel for the Ohio Funds, and that G&E would serve in an "of counsel" capacity to Bernstein Liebhard on the matter. (*Id.*). On March 2, 2009, the Office of the Ohio Attorney General ("Ohio AG") — which oversaw the litigation on behalf of the Ohio Funds — approved that arrangement and

2

requested a copy of the agreement between Bernstein Liebhard and G&E. (*Id.* ¶ 7). That same day, Karam and Titelman started working at G&E. (*Id.* ¶ 8).

Bernstein Liebhard and G&E exchanged several drafts of an agreement before entering a final letter agreement on March 5, 2009. (*Id.* ¶¶ 9-11). The letter agreement (the "G&E/BL Agreement") states in full as follows:

> Consistent with 1) Ohio's retainer agreement designating William Titelman as "Outside Counsel" in Fannie Mae, 2) the fact that Frank Karam has been managing the day to day litigation of the case, and 3) their move to Grant & Eisenhofer ("G&E"), the following agreement has been reached. Titelman and Karam, as well as G&E and Bernstein Liebhard ("BL"), wish to assure the client that there will be continuity of representation and efficient case management through the use of the same attorneys who have been working on the case regardless of their current firm affiliation. Further, this letter confirms the agreement between G&E and BL regarding G&E joining as additional counsel and serving as "Of Counsel" to BL on behalf of the Ohio funds in the Fannie Mae litigation. Pursuant to BL's previously negotiated agreement with Waite Schneider Bayless & Chesley dated July 25, 2007, providing a fee to BL out of the overall fee, said portion of the overall fee due BL shall be divided as follows: 74% to BL and 26% to G&E. Both G&E and BL shall litigate this case consistent with their fiduciary duties to the Ohio funds and the class, maintaining the highest standards of excellence.

(*Id.* ¶ 12). G&E allegedly drafted the G&E/BL Agreement (and all prior versions); Bernstein Liebhard "did not draft any language" for the agreement. (*Id.* ¶ 13).

In 2012, Markovits, Stock & DeMarco, LLC ("MSD") replaced Waite Schneider as Lead Counsel in the Fannie Mae litigation. (*Id.* ¶ 15). The case settled the following year. (*See id.* ¶ 16). In December 2013, the Fannie Mae Court approved the settlement and awarded MSD approximately $29 million in attorneys' fees and expenses to be allocated by MSD to all plaintiffs' counsel. MSD opted to allocate those funds on a *quantum meruit* basis — that is, based on the work each firm had performed and its importance to the litigation. (*See* Bigin Decl., Ex. 10, at 4-5; *see also* Decl. Michael S. Bigin Supp. Def.'s Reply (Docket No. 89) ("Bigin Reply Decl."), Ex. 4, at 43). To the extent relevant here, it allocated $4,746,652.45 to

3

Bernstein Liebhard and $324,995.61 to G&E.  (*See* Bigin Reply Decl., Ex. 1, at 4; *id.*, Ex. 4, at 51).  Significantly, MSD (and the Ohio AG) refused to honor the Waite Schneider Fee Agreement on the ground that it was unenforceable, at least in part because it would have entitled Bernstein Liebhard to 25% of the total fee award when the combined lodestar of both Bernstein Liebhard and G&E was only about 9% of the total fees.  (Pl.'s SOF 10; Decl. James J. Sabella Opp'n (Docket No. 86) ("Sabella Decl."), Ex. 9, at 80-81).  More specifically, MSD and the Ohio AG adopted the position that the Waite Schneider Fee Agreement was "not enforceable, both because it [did] not fairly reflect to the contribution of counsel and because it was premised in part upon the continuity of representation," which was not maintained.  (Bigin Decl., Ex. 13).

Not surprisingly, Bernstein Liebhard (and G&E) took a different position.  First, in September 2013, even before the Fannie Mae Court had awarded any fees, Bernstein Liebhard filed papers requesting that MSD be directed to pay Bernstein Liebhard 25% of any fees awarded.  (*See* Sabella Decl., Ex. 24).  Bernstein Liebhard acknowledged, however, that the request was premature, and agreed to defer it until after the settlement's approval.  (Sabella Decl., Ex. 23, at 2).  Second, in or before October 2013, Bernstein Liebhard prepared a draft complaint against MSD to enforce the Waite Schneider agreement.  (Def.'s SOF ¶ 22; *see* Sabella Decl., Ex. 25).  Bernstein Liebhard, however, never filed the complaint.  (Def.'s SOF ¶ 23).  Instead, on July 7, 2014, Bernstein Liebhard and MSD entered a confidential settlement agreement, pursuant to which Bernstein Liebhard received ("with the approval of Waite Schneider") an additional $439,165 — "a portion of the fees allocated to Waite Schneider" — in exchange for settling its claim.  (Sabella Decl., Ex. 27, at 2).

In the fall of 2014, MSD paid $5,185,818 (the $4,746,652 it was originally allocated plus the $439,165 it received pursuant to the 2014 settlement) to Bernstein Liebhard and $324,995 to

4

G&E.  (Def.'s SOF ¶¶ 23-24, 26; *see* Bigin Reply Decl., Ex. 1, at 4).  Thereafter, G&E filed this suit, insisting that it is owed either $1,900,000 or $1,348,000 — representing 26% of the 25% percent fee Bernstein Liebhard was to receive under its agreement with Waite Schneider and 26% of the $5,185,818 actually allocated to Bernstein Liebhard, respectively.  (Am. Compl. (Docket No. 23) ¶¶ 41-42).[1]  Following unsuccessful motions to dismiss and to transfer venue, *see Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-CV-9839 (JMF), 2015 WL 5751252 (S.D.N.Y. Sept. 30, 2015); *Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-CV-9839 (JMF), 2015 WL 1809001 (S.D.N.Y. Apr. 20, 2015), Bernstein Liebhard now moves for summary judgment.  Specifically, Bernstein Liebhard argues that receiving its fee pursuant to its agreement with Waite Schneider was a condition precedent to its obligation to share any portion of its fee with G&E — a condition that never took place.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a judgment for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial,

---

[1]   In an amended complaint, G&E also added MSD as a defendant, but the claims against MSD were dismissed for lack of personal jurisdiction.  *See Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-CV-9839 (JMF), 2015 WL 5751252 (S.D.N.Y. Sept. 30, 2015).

the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.,* 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

In a contract dispute, a court may grant summary judgment "only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008); *see, e.g., Postlewaite v. McGraw–Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) (explaining that "when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment" (citation and internal quotation marks omitted)). A contract is ambiguous if

its language is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (internal quotation marks omitted). Conversely, "a contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin Corp. v. Retail Holdings*, *N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citing *White v. Cont'l Cas. Co.,* 9 N.Y.3d 264, 848 N.Y.S.2d 603, 878 N.E.2d 1019, 1021 (2007)). "Whether contract language is ambiguous is a question of law that is resolved by reference to the contract alone." *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 58–59 (2d Cir. 1994) (internal quotation marks omitted).

## DISCUSSION

Applying the foregoing standards, the Court finds that Bernstein Liebhard is entitled to summary judgment on G&E's breach-of-contract claim because its agreement to share a portion of its fees with G&E depended on a condition precedent that was never fulfilled — namely, receipt of fees by Bernstein Liebhard pursuant to the Waite Schneider Fee Agreement. The G&E/BL Agreement provided that "[p]ursuant to BL's previously negotiated agreement with *Waite Schneider Bayless & Chesley dated July 25, 2007*, providing a fee to BL out of the overall fee, *said* portion of the overall fee due BL shall be divided as follows: 74% to BL and 26% to G&E." (Def.'s SOF ¶ 12 (emphases added)). By its terms, therefore, the fees to be divided between Bernstein Liebhard and G&E *were* the fees that the former was anticipated to receive "[p]ursuant to" the Waite Schneider Fee Agreement. It follows that Bernstein Liebhard's receiving a fee pursuant to the Waite Schenider Agreement was "necessary to" its "ability to perform the obligation at issue" — that is, dividing "*said* . . . fee" with G&E — and thus a

7

"condition precedent" to the firms' agreement. *Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 307 (2d Cir. 2016) (citing cases); *see also Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 636 N.Y.S.2d 734, 737 (1995) (defining a "condition precedent" as "an act or event . . . which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.").

Any other reading of the G&E/BL Agreement would do violence to the parties' choice of language. As Bernstein Liebhard aptly notes, "the agreement . . . could have provided that G&E would be paid 26% of 25% of the overall fee awarded in the litigation, if that's what the parties had intended. It did not. Likewise, the fee agreement . . . could have provided that G&E would be paid 26% of what BL received for its fees, if that's what the parties had intended. Again, it did not." (Def. Bernstein Liebhard LLP's Mem. Law Supp. Summ. J. (Docket No. 81) 9). Indeed, to hold that G&E is entitled to 26% of whatever fees Bernstein Liebhard received, without regard for whether those fees were actually received pursuant to the Waite Schneider Fee Agreement, would nullify the first twenty-seven words of the relevant provision (namely, those preceding the word "portion") and in their place substitute a single word of the Court's choosing (namely, "The"). But "courts may not 'by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.'" *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, No. 1:15-CV-2457 (GHW), 2016 WL 344977, at *6 (S.D.N.Y. Jan. 27, 2016) (quoting *Riverside S. Planning Corp. v. CRP/Extell Riverside*, *L.P.*, 892 N.Y.S.2d 303 (2009)).[2]

---

[2]   Because the relevant provision is unambiguous, the Court need not decided whether any ambiguities should be construed against G&E as the drafter, as Bernstein Liebhard argues. *See Village of Ilion v. County of Herkimer*, 993 N.Y.S.2d 648, 652 (2014).

8

G&E's arguments to the contrary are unpersuasive.  Notably, G&E offers no arguments based on the contract language itself.  Nor, stray language in its Local Rule 56.1 Statement aside, does G&E contend that Bernstein Liebhard received fees pursuant to the Waite Schneider Fee Agreement.[3]  Instead, G&E vaguely contends first that "[i]t makes no sense to believe that the parties to the G&E/BL Agreement intended the Agreement to have effect only if [Bernstein Liebhard] received 25% of the overall fee pursuant to the Waite Schneider Fee Agreement, but to have no effect if the fee was arrived at in some other manner."  (Pl.'s Mem. Law Opp'n (Docket No. 84) ("Pl.'s Opp'n") 8).  The premise of that argument, however, is debatable: Given that Bernstein Liebhard stood to receive anywhere from 13% to 25% of overall fees pursuant to the Waite Schneider Fee Agreement, the parties may well have sought to hedge their risks by predicating their fee-sharing agreement on payment pursuant the Waite Schneider Fee Agreement and accepting that allocation of fees between them would otherwise be made on a *quantum meruit* basis.  (*See* Def. Bernstein Leibhard LLP's Reply Mem. Law. Further Supp. Summ. J. (Docket No. 87) 3-4 (arguing that that was the parties' intent)).  In any event, the

---

[3]  In its Local Rule 56.1 Statement, G&E asserts that whether Bernstein Liebhard was paid pursuant to the Waite Schneider Fee Agreement is "[d]isputed." (Pl.'s SOF 4; *see also id.* 5-6 (asserting that whether Bernstein Liebhard was paid "based on work performed in the case" is "disputed")).  But G&E does not argue the point in its memorandum of law, thereby waiving it. *See, e.g.*, *Lima v. Hatsuhana of USA, Inc.*, No. 13-CV-3389 (JMF), 2014 WL 177412, at *1 (S.D.N.Y. Jan. 16, 2014) ("It is well established that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and alterations omitted) (citing cases)).  In fact, G&E all but concedes that Bernstein Liebhard was *not* paid pursuant to the Waite Schneider Fee Agreement — calculating, for example, what the parties would have received "*if the Waite Schneider Fee Agreement had been given effect* and [Bernstein Liebhard] had honored the G&E/BL Agreement." (Pl.'s Opp'n 6, n.6 (emphasis added)).  In any event, the evidence in the record supports only one finding: that Bernstein Liebhard was not paid pursuant to the Waite Schneider Fee Agreement.  For example, when asked at his deposition if Bernstein Liebhard received "any money pursuant to [the Waite Schneider] agreement," Bill Markovits, the named partner of MSD, responded flatly: "No." (Bigin Decl., Ex. 15, at 41).

argument is also irrelevant, as the Court's "fundamental objective is to determine the intent of the contracting parties *as derived from the language employed in the contract*." *Consol. Edison, Inc. v. Ne. Utilities*, 426 F.3d 524, 527 (2d Cir. 2005) (internal quotation marks omitted) (emphasis added). For similar reasons, G&E's second argument — based on the self-serving deposition testimony of G&E lawyers about the parties' intent — is unavailing. (Pl.'s Opp'n 8-10). Indeed, "[i]t is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002); *see also HOP Energy, L.L.C. v. Local 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012) (noting that "a court must give full effect to unambiguous contract terms" and that neither "[e]xtrinsic evidence" nor "a party's subjective intent and understanding" may be used to alter the terms of an unambiguous contract). Here, there is no basis to look beyond the language of the contract.

G&E's final argument is based on the "prevention doctrine," which provides "that a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition." *Kooleraire Serv. & Installation Corp. v. Bd. of Ed. of City of N.Y.*, 320 N.Y.S.2d 46, 48 (1971). In a nutshell, G&E argues that, if payment to Bernstein Liebhard pursuant to the Waite Schneider Fee Agreement was "a condition precedent to G&E's rights under the G&E/BL Agreement, [Bernstein Liebhard] cannot avoid its obligations under the G&E/BL Agreement because [Bernstein Liebhard] was responsible for the failure of the alleged condition precedent." (Pl.'s Opp'n 12). Notably, however, "the prevention doctrine, where it applies, creates nothing more than an *implied* contractual obligation, similar to — and perhaps rooted in — the implied covenant of good faith and fair dealing. The doctrine therefore exists to serve the intent of the parties, and does not operate at cross-purposes to that

10

intent." *Consol. Edison*, 426 F.3d at 529 (citation omitted).  Here, G&E effectively asks the Court to apply the prevention doctrine "in a way that would transform" the parties' agreement into something other than what it was.  *Id.*  The Court "decline[s]" to do so.  *Id.*

In any event, G&E's two arguments for application of the prevention doctrine are meritless.  G&E asserts first that Bernstein Liebhard is responsible for the failure of the condition precedent because it "voluntarily abandoned" any effort to enforce the Waite Schneider Fee Agreement when it settled with MSD.  (Pl.'s Opp'n 12-13).  But G&E provides no reason to believe that Bernstein Liebhard would have prevailed had it filed a lawsuit against MSD and the Ohio AG for enforcement of the Waite Schneider Fee Agreement, and certainly no basis to question Bernstein Liebhard's good faith in deciding to settle.  *See, e.g.*, *Thor Props., LLC v. Chetrit Grp. LLC*, 936 N.Y.S.2d 196, 198 (2012) (noting that the prevention doctrine is "a variant of the implied covenant of good faith and fair dealing"); *Sibbald v. Bethlehem Iron Co.*, 83 N.Y. 378, 384 (1881) (explaining that the prevention doctrine does not apply if a party "acts in good faith" when "moved fairly by a view of his own interest").[4]  More fundamentally, G&E fails to cite — and the Court has not found — any authority suggesting, let alone holding, that a party may not assert the non-fulfillment of a condition precedent to defeat a breach-of-contract claim merely because that party did not pursue a lawsuit to compel the fulfillment of the condition precedent by a non-party.  Put simply, it cannot be said that Bernstein Liebhard "frustrated or prevented" payment pursuant to the Waite Schneider Fee Agreement merely

---

[4] Notably, G&E itself admits that it did not want to be named as a plaintiff in a lawsuit, perhaps to avoid antagonizing the Ohio AG.  (*See* Pl.'s SOF 11; *see also* Bigin Decl., Ex. 12 (deposition testimony of Jay Eisenhofer stating that when he allowed a G&E lawyer to participate in Bernstein Liebhard's negotiations with Lead Counsel regarding its fee dispute, he "cautioned him" because he "didn't want to alienate the Ohio Attorney General over this")).

11

because it did not bring a lawsuit and obtain a judicial ruling endorsing its view of that Agreement. *Kooleraire*, 320 N.Y.S.2d at 48.

Second, G&E appears to suggest that Bernstein Liebhard frustrated the condition precedent to their agreement by not billing enough time in the Fannie Mae litigation, thereby enabling MSD and the Ohio AG to take the position that enforcement of the Waite Schneider Fee Agreement would "not fairly reflect the contribution of counsel." (Pl.'s Opp'n 13-14; *see also* Bigin Decl., Ex. 13). In making that argument, however, G&E improperly relies on inadmissible hearsay — namely, statements attributed to representatives of Waite Schneider by an MSD lawyer. (*See* Sabella Decl., Ex. 9, at 78). *See, e.g.*, *Mabry v. Hester*, No. 11-CV-2887 (JMF), 2014 WL 1848739, at *3 n.2 (S.D.N.Y. May 8, 2014) ("It is well settled that 'only admissible evidence need be considered by the trial court ruling on a motion for summary judgment.'" (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997))). More broadly, Bernstein Liebhard's ethical obligation was to advance the interests of its clients (the Ohio Funds), not to maximize the number of hours it devoted to the litigation. *See* Ohio Rule Prof'l Conduct 1.5(a) ("A lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee."); N.Y. Rule Prof'l Conduct 1.5(a) ("A lawyer shall not make an agreement for, charge, or collect an excessive or illegal fee or expense."); *id.* at 1.5(d)(3) ("A lawyer shall not . . . charge or collect . . . [a] fee based on fraudulent billing."). Consistent with those obligations, the G&E/BL Agreement provided that "[b]oth G&E and BL shall litigate this case consistent with their fiduciary duties to the Ohio funds and the class, maintaining the highest standards of excellence." (Def.'s SOF ¶ 12). G&E does not allege, let alone prove, that Bernstein Liebhard failed to fulfill its obligations to the Ohio Funds, and presumably does not mean to suggest that Bernstein Liebhard should have billed its clients for time beyond what the representation actually

demanded.  It follows that Bernstein Liebhard is not barred from invoking the condition precedent to which G&E agreed — namely, receipt of fees by Bernstein Liebhard pursuant to the Waite Schneider Fee Agreement.

## CONCLUSION

Significantly, the issue in this case is not whether G&E is entitled to *any* payment for its work in the Fannie Mae litigation.  Pursuant to MSD's allocation of the fees awarded by the Fannie Mae Court, G&E has been paid based on the work it actually performed — that is, on a *quantum meruit* basis.  Instead, the issue is whether G&E is entitled to more than the amount it received from MSD based on its agreement with Bernstein Liebhard.  Based on the unambiguous language of that agreement, the Court concludes that G&E was entitled to 26% of Bernstein Liebhard's fees *only if* Bernstein Liebhard received fees pursuant to the Waite Schneider Fee Agreement.  Because Bernstein Liebhard did *not* receive fees pursuant to that Agreement, and Bernstein Liebhard did not do anything to frustrate or prevent that condition precedent from being fulfilled, G&E is not entitled to recover additional fees from Bernstein Liebhard based on breach of the parties' contract.  Accordingly, Defendant's motion for summary judgment is GRANTED, and the Complaint is dismissed.

The Clerk of Court is directed to terminate Docket No. 80 and to close the case.

SO ORDERED.

Date: July 27, 2016
      New York, New York

JESSE M. FURMAN
United States District Judge

13